**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Mary Ann Couture, | ) | No. CV-12-00106-PHX-FJM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| General Motors, LLC et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

We have before us plaintiff's motion for judgment on the administrative record (doc. 26), the administrative record (doc. 25), defendants' response (doc. 29), and plaintiff's reply (doc. 31).

**I**

This case involves a dispute over Donald Couture's (Mr. Couture's) claim for healthcare coverage under a self-funded employee benefits plan (the "Plan") governed by the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §§ 1001-1461. Mr. Couture died on September 12, 2012, and was survived by his wife, Mary Ann Couture. On February 6, 2013, we granted counsel's motion to substitute Mary Ann Couture as plaintiff in this action (doc. 32).

Mr. Couture was a 63-year-old resident of Saginaw, Michigan, with a history of abdominal issues. In January 2008, while he was in Florida, Mr. Couture experienced

1  intense abdominal swelling and pain, and was rushed to the emergency department at Cape
2  Canaveral Hospital in Cocoa Beach, where Dr. Michael J. McLaughlin ("Dr. McLaughlin")
3  performed surgery to remove an abscess in his abdominal wall.  After the surgery, Dr.
4  McLaughlin contacted Dr. James C. Lathrop ("Dr. Lathrop"), Mr. Couture's long-time
5  treating physician, who agreed to assume his care.  Doc. 25-3 at 43.  On January 17, 2008,
6  Angel MedFlight ("AMF") transported Mr. Couture by air ambulance to Covenant Health
7  Care in Michigan, where he could be treated by Dr. Lathrop.  Dr. McLaughlin executed a
8  letter stating:

> The decision was made to go by air ambulance due to the size of the wound, the open wound, and the surrounding cellulitis.  I did not think that it was wise to send him on a regular airline subjecting other people to his open wound as well as potentially subjecting him to infection from other people.  This patient has a very serious condition and air ambulance was the appropriate mode of transportation.  Doc. 25-1 at 157.

13 Dr. Lathrop opined that Mr. Couture's transfer to Michigan via airline for further medical
14 treatment was a medical necessity and in his best interest.  Id. at 159.

15  On January 20, 2008, AMF submitted its claim for payment to Blue Cross Blue
16 Shield ("BCBS"), General Motors Corporation's ("GM") third-party claims administrator.
17 BCBS denied payment for the air ambulance on the basis that service(s) were not a covered
18 benefit.  Id. at 161.  On October 31, 2008, BCBS reprocessed the claim and paid $1,137.60
19 for a "Specialty Care Transport" charge, but denied payment for all other portions of the air
20 transport.  Id. at 199.  AMF filed an appeal on Mr. Couture's behalf on August 20, 2009.
21 BCBS affirmed its denial of the claim stating that "ambulance coverage is provided for
22 medically necessary transportation to the closest available facility," and "there is no
23 indication or medical necessity as to why [Mr. Couture] had to be transferred to Michigan
24 rather than a closer facility in Florida." Doc. 25-3 at 34.  Pursuant to the voluntary review
25 process described in the Plan, Mr. Couture submitted the claim to GM.  GM affirmed the
26 denial of benefits for the air ambulance services because "Air Ambulance transportation from
27 hospital to hospital is not covered under the Program, and any other transportation must be
28

medically necessary." Id. at 102-103.

Plaintiff alleges that GM's decision to deny Mr. Couture's air ambulance benefits violated federal law because GM failed to provide a reasoned explanation for denial of the benefits and ignored uncontradicted medical opinions that the flight was medically necessary. Plaintiff seeks reimbursement for the air transport medical services.

## II

The denial of benefits under an ERISA plan should be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-957 (1989). Here, the Plan gives the administrator discretionary authority to interpret and apply it. Doc. 25-1 at 78. Accordingly, we review the denial of benefits for abuse of discretion. See Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 673 (9th Cir. 2011).

A plan administrator abuses its discretion when it renders a decision that is "(1)illogical; (2) implausible; or (3) without support in inferences that may be drawn from the record." Id. If a benefit plan gives discretion to an administrator who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115, 109 S. Ct. at 957. A higher degree of skepticism is appropriate where the administrator has a conflict of interest. Salomaa, 642 F.3d at 676. A structural conflict of interest exists where an employer both administers and funds the plan. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 112, 128 S. Ct. 2343, 2348 (2008).

Because GM provides financing for the Plan and delegates claim administration to BCBS, there is no patent conflict of interest. Doc. 25-1 at 15. However, a structural conflict of interest is not necessarily negated by delegating authority to a third-party administrator. Here, GM made the final benefit determination. Moreover, certain sections of the Plan state that GM is the administrator. See e.g. Doc. 25-1 at 70 ("General Motors is responsible for

1 administration of pension and welfare benefit plans..."); Id. at 71 ("General Motors
2 Corporation is the sponsoring employer and the plan administrator of the pension and welfare
3 benefit plans..."). Accordingly, we apply a higher level of skepticism to the administrator's
4 actions.

5      A review of the record reveals that the plan administrators' benefits determination is
6 illogical and unsupported by evidence in the record. The Plan states that air ambulance
7 coverage is available for medically necessary transportation for:

8      Transporting a patient one-way from home or scene of incident in cases of
     medical emergency or accidental injury to the nearest available facility
9      qualified to treat the patient. Doc. 25-1 at 19.

10 BCBS denied payment for the air ambulance initially stating that the service(s) were not a
11 covered benefit. The denial is inconsistent with the plain language of the Plan and Drs.
12 Lathrop and McLaughlin's opinions that Mr. Couture's air transportation from Florida to
13 Michigan was medically necessary. In response to Mr. Couture's appeal, BCBS did not
14 explain why it rejected the physicians' opinions. Instead, BCBS based its denial of benefits
15 on the opinion of a medical consultant who reviewed Mr. Couture's medical file and
16 concluded that it supported ambulance transport, but lacked information about the necessity
17 of the transport. Doc. 25-2 at 58. Neither BCBS nor its consultant explained why the
18 physicians' written opinions are insufficient proof that the air transport was medically
19 necessary. An administrator does not meet its burden under the statute and regulations by
20 saying merely "we are not persuaded" or "your evidence is insufficient." Salomaa, 642 F.3d
21 at 680. To deny a claim without a logical explanation for doing so is an abuse of discretion.

22      GM also failed to provide a logical explanation for denying Mr. Couture's air
23 ambulance benefits. In its benefits determination letter, GM relies on the assessment of
24 BCBS's medical consultant, which as discussed above, is an insufficient basis to deny the
25 claim. See Doc. 25-3 at 102. GM also contends that the denial should be upheld because the
26 Plan does not cover air transport from hospital to hospital. Id. at 103. However, there is no
27 language in the Plan prohibiting transportation from hospital to hospital. The Plan covers
28

1 transportation from "the scene of an incident in cases of medical emergency," which in this
2 case was a hospital in Florida, to "the nearest available facility qualified to treat the patient."
3 Defendants argue that Mr. Couture failed to meet the burden of showing that his air transport
4 was medically necessary and that the closest qualified facility was in Michigan. Response
5 at 8. We disagree. Mr. Couture submitted two uncontradicted letters from his physicians
6 indicating that the air ambulance to Covenant HealthCare in Saginaw, Michigan was
7 medically necessary. Dr. Lathrop's letter specifically states that Mr. Couture's transfer to
8 Saginaw "was necessary due to the fact that he ha[d] an extensive medical history with [Dr.
9 Lathrop] and continued treatment and recovery [...] in Saginaw was in his best interest."
10 Doc. 25-1 at 159. We reject defendants' suggestion that although it was in Mr. Couture's
11 best interest to receive treatment from a doctor familiar with his history, it was not medically
12 necessary to fly him to Michigan. What is in the patient's best interest is medically
13 necessary. Moreover, while we recognize there are many facilities between Florida and
14 Michigan capable of treating patients, the nearest facility where Mr. Couture could receive
15 the medically necessary treatment from Dr. Lathrop was in Saginaw, Michigan. Therefore,
16 the evidence in the record shows that Mr. Couture's air transport is covered under the Plan.
17 Because GM has not provided a reasonable basis supported by the record to deny coverage
18 for the air ambulance, its determination was an abuse of discretion.

19 **IT IS ORDERED GRANTING** plaintiff's motion for judgment on the administrative
20 record (doc. 26). The clerk shall enter final judgment in favor of plaintiff and against
21 defendants.

22 DATED this 17th day of April, 2013.

*Frederick J. Martone*

Frederick J. Martone
Senior United States District Judge

- 5 -